**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| BURNS & McDONNELL ENGINEERING COMPANY, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 08-75C (Senior Judge Bruggink) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**INDEX TO APPENDIX**

Document — Page

Defendant's Response to Plaintiff's Motion to Compel Mediation . . . . . . . . .A1

Declaration of Ted H. Streckfuss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .A15

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BURNS & McDONNELL ENGINEERING COMPANY, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 08-75C (Senior Judge Bruggink) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL MEDIATION

Defendant, the United States, respectfully responds to plaintiff's motion to compel mediation pursuant to Rule 7 of the Rules of the United States Court of Federal Claims ("RCFC").

Plaintiff, Burns & McDonnell Engineering Company, Inc. ("Burns"), seeks an order from this Court directing the United States to attend a mediation with Burns and Anderson Consulting Engineers ("Anderson"). In actuality, Burns's motion is nothing more than a premature attempt to recover the identical relief sought in Count II of its complaint without affording the Government the 60-day period provided by RCFC 12(a)(1) for responding to a complaint. Because this Court lacks jurisdiction to award the specific performance sought in both the motion to compel and Count II of the complaint, the Court should deny Burns's motion.[1]

**STATEMENT OF THE CASE**

On January 16, 2002, Burns and the United States Army Corps of Engineers ("COE") entered into a contract for land surveying services of the fish hatchery site located at Ft. Peck,

---

[1] The Government intends to file a motion to dismiss within the time period provided by RCFC 12(a)(1).

Montana. Addendum at 1.[2] Burns subcontracted some of the surveying duties to Anderson. Id. Anderson committed surveying errors that caused the COE to suffer $553,437.00 in damages. Id. at 2. To resolve the COE's claims related to the surveying error, Burns and the COE executed a settlement agreement by which Burns paid the COE $553,437.00. Id. In executing the agreement, Burns maintained that there may be evidence "validating its position that the COE knew or should have known that the survey error existed at an earlier time such that the damages that resulted from the error would have been substantially mitigated." Id. at 3 ¶ 3. Therefore, the settlement agreement delineates a number of steps which Burns must take in the event it discovers such evidence. Specifically, the agreement states that the process shall consist of:

> (a) the Burns Business Manager shall raise the issue with the COE Project Manager; if they are unable to agree on a resolution of the issue, it shall be raised (b) to the District Engineer and CEO of Burns for discussion; if the issue is not settled at that level (c) the parties shall agree to mediate the dispute before a single mediator mutually selected by the COE and Burns with the mediation session to be held in Omaha, Nebraska.

Id. The agreement further provides that "Anderson may be included in the mediation upon agreement by the COE." Id.

On December 27, 2005, Burns filed suit against Anderson in the United States District Court for the District of Montana seeking to recover the damages it incurred in connection with the surveying error, including the monies it paid to the COE. On April 11, 2007, Burns filed a motion to supplement the complaint to add the COE as a party. Burns simultaneously filed a

---

[2] Although Burns's motion states that the settlement agreement at issue is attached as Exhibit A to the motion to compel and incorporated by reference thereto, there are no exhibits attached to the motion. Accordingly, we hereby attach the settlement agreement as an addendum to this response.

motion to compel the COE to mediate that case. The motion to compel was identical to the motion filed in this case. The district judge denied the motion without prejudice for renewal if appropriate following service of process upon and appearance by the COE. On May 2, 2007, Burns filed its amended complaint to include claims against the COE for declaratory judgment and specific performance. It renewed its motion to compel on September 26, 2007. A week later, the Government filed a motion to dismiss the complaint for lack of jurisdiction. Rather than addressing the merits of the motion, Burns's response asked the district court to transfer the case to this Court rather than grant the motion to dismiss. The Government conceded to the transfer, but expressly noted that it did not waive any defenses or make any representations as to the propriety of jurisdiction and venue in this Court. Accordingly, the claims against the United States were transferred from the District of Montana to this Court. The district judge did not reach the merits of the motion to dismiss or the motion to compel.

The case was transferred to this Court on February 5, 2008, and Burns filed its complaint on March 7, 2008. On March 24, 2008, before the United States had an opportunity to respond to the complaint, Burns filed its motion to compel mediation. Citing paragraph 3 of the settlement agreement, the motion asks the Court to order the COE to mediate the case with Burns and Anderson.

## ARGUMENT

This Court should deny Burns's motion to compel mediation, which mirrors Count II of Burns's complaint, because the Court lacks jurisdiction to entertain a claim for specific performance. It is well-established that this Court is one of limited jurisdiction. Inter-Coastal Xpress, Inc. v. United States, 296 F.3d 1357, 1365-66 (Fed. Cir. 2002). Absent congressional

consent to entertain a claim against the United States, the Court lacks authority to grant relief. United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941). Congressional consent to suit in this Court, thereby waiving the Government's traditional immunity, must be explicit and strictly construed. United States v. Mitchell, 445 U.S. 535, 538 (1980); Yancheng Baolong Biochemical Prods. Co. v. United States, 406 F.3d 1377, 1382 (Fed. Cir. 2005). A waiver of sovereign immunity cannot be implied, but must be unequivocally expressed. Testan, 424 U.S. at 399; United States v. King, 395 U.S. 1, 4 (1969).

"[This] Court cannot entertain claims for injunctive relief or specific performance except in narrowly defined, statutorily provided circumstances not here pertinent." Kanemoto v. Reno, 41 F.3d 641, 644-45 (Fed. Cir. 1994) (citing 28 U.S.C. § 1492(a)(2) (vesting Court with injunctive power in pre-award bid protest cases)); see also Massie v. United States, 226 F.3d 1318, 1321 (reversing Court of Federal Claims award of equitable remedy). With the exception of such specific statutory waivers of sovereign immunity, this Court's Tucker Act jurisdiction is expressly limited to claims for monetary relief. King, 395 U.S. at 4 ("cases seeking relief other than money damages from the court of claims have never been 'within its jurisdiction'"); First Hartford Corp. V. United States, 194 F.3d 1279, 1294 (Fed. Cir. 1999) (but for the carve out in 28 U.S.C. § 1491(b)(2), the United States Court of Federal Claims "cannot grant nonmonetary equitable relief such as an injunction or declaratory judgment, or specific performance"); Ruttenberg v. United States, 65 Fed. Cl. 43, 50 (2005); Spectrum Leasing Corp. v. United States, 764 F.2d 891, 893 n.2 (D.C. Cir. 1985) ("[The Tucker Act] is intended to foreclose specific performance of government contracts."). "Thus, because the range of relief available in the Court of Federal Claims is limited, the waiver of sovereign immunity provided under the Tucker

Act will not always provide an adequate remedy in a suit against the United States." Kanemoto, 41 F.3d at 645 (Fed. Cir. 1994).

In this case, both Burns's motion to compel and Count II of its complaint seeks specific performance of a government contract. Citing paragraph 3 of the settlement agreement, Burns asks the Court to order the COE to participate in mediation with Burns and Anderson. It is well-established that Congress has not waived sovereign immunity for this purpose. E.g., King, 395 U.S. at 4. Regardless of the vehicle by which Burns seeks specific performance, by complaint or motion, this Court lacks jurisdiction to entertain the claim. Accordingly, this Court should deny Burns's motion.

**CONCLUSION**

For these reasons, we respectfully request that the Court deny Burns's motion to compel mediation.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Mark A. Melnick
MARK A. MELNICK
Assistant Director

Case 1:08-cv-00075-EGB Document 9 Filed 03/31/2008 Page 6 of 7

s/ Dawn E. Goodman
DAWN E. GOODMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530
Tel: (202) 616-1067
Fax: (202) 514-8624

March 31, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 31st day of March, 2008, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL MEDIATION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Dawn E. Goodman
DAWN E. GOODMAN

# ADDENDUM

SETTLEMENT AGREEMENT AND RELEASE

This Agreement is executed between the U. S. Army, Corps of Engineers, Omaha District (hereinafter "COE") and Burns & McDonnell Engineering Company, Inc (hereinafter "Burns") pursuant to Contract DACA 45-02-D-0002, Delivery Order 0003, dated January 16, 2002 entered into for topographic mapping of the fish hatchery site located at Ft. Peck, MT (hereinafter "contract").

WHEREAS, the U.S. Army Corps of Engineers ("COE") has asserted a claim against Burns arising out of land surveying services performed by Burns' subconsultant, Anderson Consulting Engineers (hereinafter "Anderson") for topographic mapping of the fish hatchery site located at Fort Peck, MT , which claim alleges extra costs incurred or to be incurred by the COE under Modification R00016 to Construction Contract DACW45-03-C-0015 (hereinafter "Claim"); and

WHEREAS, the COE and Burns desire to resolve the Claim in such a way as to permit the timely funding of the costs for the claim; and

WHEREAS, Burns and Anderson allege that Burns and Anderson may have defenses to the Claim based upon possible knowledge of COE of the survey errors

or lack of timely notice to Burns and Anderson which may have mitigated the damages to the COE; and

WHEREAS, the COE has determined the damages relative to the survey errors to be $553,437.00 and the COE and Burns have agreed to settle the Claim by a payment by Burns to the COE in that amount; and

WHEREAS, if any information or documents is discovered that would evidence knowledge by the COE as to the existence of the survey error before it was discovered in the field (alleged "early discovery" issue), Burns reserves the right to assert this defense in a future dispute resolution process to the Claim and the right to assert a claim for a refund of amounts which could have been avoided by the COE; and

NOW, THEREFORE, in consideration of the mutual promises, covenants and agreements set forth below, the sufficiency of which is hereby acknowledged, the parties agree and stipulate as follows:

1. Burns will pay to the COE $553,437.00 for the work required as a result of the claim by check sent by overnight courier within 24 hours of receipt of a signed copy of this Agreement.

2. Burns and\or Anderson shall conduct and conclude its investigation of all issues that might give rise to dispute resolution in a timely manner, but not to exceed 9 months from execution of this agreement. The COE has provided

information relative to the "early discovery" issue and will continue to provide information relative to the "early discovery" issue if and to the extent that it is discovered. COE shall use its best efforts to require the contractor, its subcontractor and construction surveyor —to cooperate and make available documents that relate to the so called "early discovery" issue.

3. Burns agrees that, in the event it discovers information that, in its opinion, validates its position that the COE knew or should have known that the survey error existed at an earlier time such that the damages that resulted from the error would have been substantially mitigated, it shall bring the matter to Dispute Resolution. Dispute Resolution shall consist of the following: (a) the Burns Business Manager shall raise the issue with the COE Project Manager; if they are unable to agree on a resolution of the issue, it shall be raised (b) to the District Engineer and CEO of Burns for discussion; if the issue is not settled at that level (c) the parties shall agree to mediate the dispute before a single mediator mutually selected by the COE and Burns with the mediation session to be held in Omaha, Nebraska. Anderson may be included in the mediation upon agreement by the COE. In the event that the dispute is not resolved through mediation, Burns may bring an action under existing and available legal authorities.

4. The COE hereby fully and unconditionally releases Burns and Anderson and their respective officers, directors, partners, agents, servants,

employees, consultants, insurers, successors, assigns and related corporations (the "Released Parties") from any and all debts, losses, damages, costs, expenses, liabilities, claims, lawsuits, proceedings and causes of action, whether direct and/or indirect that the COE may have had or may now or in the future have against the Released Parties arising out of or relating, whether directly or indirectly, to the Claim, including any and all known defects/problems with the services performed by the Released Parties under the Burns Contract.

5. This Agreement shall be binding upon, and inure to the benefit of the Parties and their permitted successors, assigns and representatives.

6. The Parties agree that this Agreement shall be governed and construed in accordance with Federal law. Terms contained herein shall not be construed against a Party merely because that Party is or was the principal drafter.

7. This Agreement represents the entire agreement between the Parties hereto relating to the Claim and the terms of this Agreement are contractual in nature. This Agreement may not be modified, interpreted, amended, waived, or revoked except by a writing signed by all Parties or their attorneys.

8. This Agreement may be executed in identical original counterparts, with each counterpart constituting the entire Agreement.

9. The COE agrees to give Burns a positive ACASS report related to the Burns Contract and to provide Burns with a positive letter of recommendation for

its services under the Burns Contract. The COE further agrees to provide reasonable assistance to Burns, including making available fact witnesses and documents for deposition and trial, in accordance with applicable Army Regulations, in Burns' efforts to assert its indemnity rights against Anderson and Anderson's insurer.

10. The Parties warrant to each other that they have the legal authority and capacity to compromise and release all claims which have been asserted or which could have been asserted in connection with the Claim. The Parties further warrant that they have the legal authority and capacity to enter into this Agreement.

11. The individuals signing this Agreement represent and warrant that they are duly authorized to enter into and execute this Agreement on behalf of the entities on whose behalf they are signing.

12. The invalidity or unenforceability of any provision in the Agreement shall in no way affect the validity or enforceability of any other provisions herein.

13. Nothing herein shall be construed or deemed as an admission of liability on behalf of Burns as to any responsibility for the Claim. Further, Burns specifically denies any wrongdoing in the performance of its services on the Project and further denies any and all liability for the Claim.

14. The recitals in the Whereas clauses set forth above are incorporated into this Agreement by reference.

IN WITNESS WHEREOF, the Parties have executed this Agreement by their duly authorized officers effective as of April 13th, 2005.

| U.S. ARMY CORPS OF ENGINEERS | BURNS & McDONNELL ENGINEERING COMPANY, INC. |
|---|---|
| By: [signature] | By: [signature] |
| Name Ken A. Spohn | Name: Greg M. Graves |
| Title: Contracting Officer | Title: President & CEO |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| BURNS & McDONNELL ENGINEERING COMPANY, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 08-75C (Senior Judge Bruggink) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DECLARATION OF TED H. STRECKFUSS

I, Ted H. Streckfuss, swear and declare under penalty of perjury as follows:

1. I am a professional engineer employed in the Engineering Division of the Omaha District of the U.S. Army Corps of Engineers, located in Omaha, Nebraska.

2. I am, and always have been, the Project Manager and Project Engineer for the Fish Hatchery and Rearing Ponds Project at Fort Peck, Montana, Construction Contract No. DACW45-03-C-0015, the project which is the subject of this lawsuit.

3. I am familiar with the settlement agreement at issue in this case concerning the land surveying services error committed by Anderson Consulting Engineers entered into between the Army Corps of Engineers ("COE") and Burns & McDonnell Engineering Company, Inc. ("Burns").

4. Paragraph 3 of the settlement agreement states, in pertinent part:

> Burns agrees that, in the event it discovers information that, in its opinion, validates its position that the COE knew or should have known that the survey error existed at an earlier time such that the damages that resulted from the error would have been substantially mitigated, it shall bring the matter to Dispute Resolution. Dispute Resolution shall consist of the following: (a) the Burns Business Manager shall raise the issue with the COE Project Manager; if they are unable to agree on a resolution of the issue, it shall be raised (b) to the District Engineer and CEO of Burns for discussion; if the issue is not settled at that level (c) the

> parties shall agree to mediate the dispute before a single mediator mutually selected by the COE and Burns with the mediation session to be held in Omaha, Nebraska. Anderson may be included in the mediation upon agreement by the COE. In the event that the dispute is not resolved through mediation, Burns may bring an action under existing and available legal authorities.

5. At no time before the filing of the lawsuit against the COE by Burns in the District Court of Montana, did the Burns Business Manager, or anyone affiliated with Burns, contact me to discuss information that, in Burns's opinion, validated its position that the COE knew or should have known that the survey error existed at an earlier time such that the damages that resulted from the error would have been substantially mitigated

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and accurate. Executed on April 17, 2008.

[signature], ENV. P.E.
Ted H. Streckfuss