# APPENDIX 1 TO EXHIBIT B

CROWLEY, HAUGHEY, HANSON, TOOLE & DIETRICH P.L.L.P.
ATTORNEYS AT LAW

45 DISCOVERY DRIVE · SUITE 200 · BOZEMAN, MONTANA 59718
P.O. BOX 10969 · BOZEMAN, MONTANA 59719-0969
TEL (406) 556-1430 · FAX (406) 556-1433
www.crowleylaw.com

STEPHEN M. BARRETT
COLBY L. BRANCH * #
KATY A. BRANDIS
ALAN C. BRYAN #
ASHLEY BURLESON
DAVID L. CHARLES
PAUL C. COLLINS
GARY M. CONNELLEY
RENEE L. COPPOCK
MARCIA J. DAVENPORT
JASON A. DELMUE
MICHAEL S. DOCKERY
JOHN B. DUDIS, JR.
JON T. DYRE #
MARY SCRIM DYRE
SCOTT A. FISK
BRUCE A. FREDRICKSON *
MICHAEL W. GREEN
ROBERT C. GRIFFIN
PETER F. HABEIN
SCOTT D. HAGEL
NATHAN S. HANEY
KEVIN P. HEANEY
KENNETH G. HEDGE *
JAMES R. HINTZ
BRIAN HOLLAND
LARRY A. HOLLE
STEVEN W. JENNINGS
DANIEL D. JOHNS
DARIN W. JOHNSON
JOEL L. KALEVA
ALLAN L. KARELL
KIELY S. KEANE
PETER M. KIRWAN
WILLIAM D. LAMDIN III
MICHAEL J. LANSING #
KENNETH K. LAY
JOHN R. LEE *
JARED M. LE FEVRE
STEVEN J. LEHMAN
JULIE A. LICHTE
DENISE D. LINFORD #
JASON P. LOBLE
CHRIS MANGEN, JR.
WILLIAM J. MATTIX
JOE C. MAYNARD, JR.
JOHN H. MAYNARD
JOSEPH P. MAZUREK
IAN McINTOSH
DANIEL N. McLEAN
MATTHEW F. McLEAN #
ROBERT G. MICHELOTTI, JR.
STEVEN R. MILCH
KIMBERLY S. MORE
DONALD R. MURRAY, JR.
KRISTIN L. OMVIG
JEFFERY J. OVEN #
SHANE D. PETERSON *
HERBERT I. PIERCE III
FRED C. RATHERT *
STEVEN P. RUFFATTO
GINA S. SHERMAN
SCOTTI M. SHINGLETON
JAMES P. SITES
GARTH H. SJUE *
LEONARD H. SMITH
CHRISTOPHER C. VOIGT #
DAVID M. WAGNER
NEIL G. WESTESEN
BRYAN P. WILSON
RONALD E. YOUDE

RETIRED
JAMES M. HAUGHEY
BRUCE R. TOOLE

OF COUNSEL
GEORGE C. DALTHORP
JOHN M. DIETRICH
DAVID L. JOHNSON
GARELD F. KRIEG
ARTHUR F. LAMEY, JR.
LOUIS R. MOORE *
MYLES J. THOMAS
FRED E. WHISENAND *

OFFICES
500 TRANSWESTERN PLAZA II
490 N. 31ST STREET
P.O. BOX 2529
BILLINGS, MT 59103-2529
PHONE (406) 252-3441

100 NORTH PARK AVENUE
SUITE 300, P.O. BOX 797
HELENA, MT 59624-0797
PHONE (406) 449-4165

111 EAST BROADWAY
P.O. BOX 1206
WILLISTON, ND 58802-1206
PHONE (701) 572-2200

431 FIRST AVENUE WEST
P.O. BOX 759
KALISPELL, MT 59903-0759
PHONE (406) 752-6644

700 S.W. HIGGINS
SUITE 200
MISSOULA, MT 59803
PHONE (406) 829-2732

Attorneys are licensed in Montana unless otherwise noted; * also licensed in North Dakota; # also licensed in Wyoming; + not licensed in Montana

December 20, 2005

**Privileged and Confidential: For Settlement Purposes Only**

Greg Smith
104 2nd Street S., Suite 101
P.O. Box 2685
Great Falls, MT 59403-2685

RE: Burns & McDonnell/Anderson Engineering
Ft. Peck Fish Hatchery Project/Discovery of Survey Error
Our File No. 10-192-107

Dear Greg:

Thank you for taking the time to discuss this matter with me on December 14. As we discussed in that call, I am writing to provide you with the information Anderson Engineering has gathered to date regarding discovery of the alleged survey error. Because you are Burns & McDonnell's Montana counsel I have addressed this letter to you so that you can communicate this information to your client.

As you know, Anderson Engineering was not a party to the settlement agreement between the COE and Burns & McDonnell, nor did Anderson Engineering participate in the negotiation of that settlement agreement. Further, before Burns & McDonnell executed that agreement Anderson Engineering specifically informed Burns & McDonnell that Anderson could not and would not be bound by that agreement. Burns & McDonnell did not inform Anderson to the contrary before it signed the Settlement Agreement. Anderson Engineering's position on that issue has not changed, and it has not heard any contrary position from Burns & McDonnell.

However, Anderson Engineering recognizes that in the settlement agreement the COE and Burns & McDonnell agreed to a nine-month "window" in which Burns & McDonnell could investigate the "early discovery" issue and to initiate dispute resolution procedures between Burns & McDonnell and the COE. I do not know what investigation Burns & McDonnell has conducted during this time

frame, but wanted to share with you the information uncovered by Anderson Engineering. Much of this information was either available to Burns & McDonnell a the time of the agreement with the COE or provided to Burns & McDonnell before it engaged in the settlement with the COE. Most of this information was located in the material produced by the COE following the March 29, 2005 meeting in Omaha. Burns & McDonnell is free to use this information in its discussions and negotiations with the COE.

Anderson Engineering performed the survey services in January through March, 2002. The contractor, Sletten Construction, began work in July or August, 2003. Sletten hired Guenzi-Meyer, Inc. to perform survey work for Sletten. The first indication of any survey errors occurred in August, 2003. On August 18, 2003, Roger Meyer of Guenzi-Meyer sent a memo to Sletten Construction regarding the progress in survey staking at the Fort Peck Hatchery. A copy of this memo is attached as Exhibit 1. I realize there are a couple of items that are difficult to read, but this is my only copy of this memo. I believe that the line in the fifth paragraph reads "I scaled dimensions from the set of plans in the construction trailer for calculating the proposed Manhole locations, indicated to Linder that the Scale Bar on Sheet U1.04 did not scale properly." I believe that the second to the last paragraph on Page 2 reads:

> A look at Friday's "as-built" survey indicated a discrepancy in elevations for existing manholes shown on plans. Ran Level Loop from EXIST. MH (U1.05) to NEW LIFT STATION (U1.04), and found overall discrepancy of approximately 1.5 feet in elevation.

*(Ex. 1).* No one contacted Anderson Engineering at this time regarding these elevation errors.

In addition, an invoice Guenzi-Meyer submitted to Sletten in the spring of 2004 for costs allegedly related to the survey error includes a charge of $2,350.00 on August 15, 2003 for "survey extra for sewer line." *(Ex. 2).* Similarly, there is a September 18, 2003 Guenzi-Meyer invoice that includes a $600.00 charge for "field survey-revised MH5 and 6 locations." *(Ex. 3).*

Interestingly, one thing I did not see in the COE's documents from the August, 2003 time period were Quality Assurance Reports ("QARs"), which appear to be the equivalent of daily logs. An October 28, 2004 e-mail from Don Streib, the on-site project representative for the COE, stated that he did not have any QARs for the "first few days" but attached some notes from August, 2003, although it is not clear who authored those notes. *(Ex. 4).* Anderson Engineering sent a FOIA request to the COE that included a request for QARs from this time period.

The earliest QARs I saw were dated in September, 2003. The September 23, 2003 QAR includes the statement "there is talk about the sewer line being at wrong grades in a couple of areas." *(Ex. 5).* The November 10, 2003 QAR states "surveyor laying out the chimneys in Area 5 and 6. The layout on the first chimneys and kettles were 17 inches off. I found out this morning." *(Ex. 6).* All of these items indicate that survey issues already were apparent to some parties.

The COE claims that it did not receive "official notice" of the alleged surveyors until late April, 2004. Guenzi-Meyer issued a report on April 19, 2004 regarding site-wide elevation errors Guenzi-Meyer had discovered. Sletten transmitted this report to the COE at the end of April, 2004, and Anderson Engineering first received notice of the problem during the first week of May, 2004. Numerous parties, including Sletten, the COE, Burns & McDonnell, Anderson, and Oakland & Fisher became involved in analyzing the scope of the problem and possible solutions, as well as the cost of those solutions. It appears that Sletten and the COE were communicating via e-mail on a frequent basis. Apparently, the COE initially thought the problem was not as significant as Sletten and Oakland & Fisher later claimed it was. Don Streib sent an e-mail to Larry Jackson, the COE area supervisor, on July 1, 2004 stating:

> Until a few minutes ago I was under the impression that the only survey work in the pond and dyke area that was done was laying out the center lines of the dykes. Now they are trying to tell me that they had most of the ponds slope staked. This is going to open up a really big bag of worms.
>
> 1) Why didn't they notice the problem then and notify us sooner.
>
> 2) Why didn't they give us all the information instead of just 14 shots. If we could have had all the shots taken we could have made a decision on what to do earlier.
>
> I am getting the feeling that the surveyor and Oakland-Fisher are really trying to get into our pockets.

*(Ex. 7)*. Larry Jackson communicated with Sletten and Sletten claimed it had done this work back in April, but Larry Jackson stated that he did not remember seeing slope stakes in the ground when he was there on April 21. *(Id.)*.

Finally, on October 7, 2004, Charles Neff, an attorney for Oakland and Fisher, wrote a claim letter to Sletten and the COE. In this letter, Mr. Neff stated:

> Now it has been confirmed that the initial site surveys published by the Corps were off by around 1.5 feet impacting the dirt cut and fill work to be performed over the entire approximately 98 acres of the project site. Beginning in September-October, 2003, Roger Meyer of the survey firm Guenzi-Meyer, Inc. ("Meyer") was finding elevation errors in the initial master site survey at the lift station and manhole no. 6 site of around 1.5 feet for which the Corps was notified in writing. Such site elevation problems continued through October 2003 when questions arose over the amount of cover for the sewer line and elevation for other manhole covers which complaints about site elevation error continued through to March 2004 with no response or input from the Corps to OFC or Sletten as to the problem.
>
> In March, 2004, OFC was installing sewer line C and elevations were found to be off over a foot. The Corps, after being informed, instructed OFC to increase the

> slope on line C to make it fit the original elevation specifications. This was the Corps' first response to this elevation problem.
>
> ***
>
> The faulty elevation specification set forth in the original specifications now have had a severe impact on almost every aspect of OFC's dirt work performed over the last year on this contract. It is doubly unfortunate to have Mod 16 come up to correct these elevations at this time when the original elevation errors were reported by OFC and Meyer in September of 2003.
>
> ***
>
> However, OFC contends the survey discrepancies in elevation and the Corps' failure or reluctance to check out this problem when first discovered (as notified first in September, 2003) has caused OFC to be unable to perform its dirt work and pond piping in a timely and cost efficient manner, in extra work costs, rework costs and lost revenue has now been unfairly incurred by OFC.

*(Exhibit 8).* This letter indicates that there were additional communications between OFC, Sletten, and the COE in 2003 regarding elevation errors, but I have not received evidence of these communications. More importantly, the letter clearly demonstrates that OFC believed the errors OFC discovered in the fall of 2003 were related to the errors identified in April, 2004 and that OFC believed the COE had ignored its earlier complaints.

After reviewing this letter I called Mr. Neff on April 1, 2005 and he agreed to send me copies of written communications regarding elevation errors and a description of any verbal communications. I confirmed this conversation in writing that same day. On April 5, 2005, Mr. Neff sent me a letter indicating that he had talked with OFC and OFC had asked him to stay out of the matter because the COE and Sletten were still in negotiations. As a result, I did not receive anything from Mr. Neff.

I recently contacted Mr. Neff again to see if OFC's position had changed. Mr. Neff informed me that he had not talked to his client since my communication with him last April. Mr. Neff did not know what resolution, if any, had been reached with respect to OFC's claim and he told me that he did not have any documents relating to this matter. Rather than contacting his client, Mr. Neff gave me permission to speak to OFC directly. I spoke with Dean Oakland on December 14, 2005 and he told me that he might be willing to give me copies of documents from OFC's file, but before making a final determination he wanted to talk the matter over with the consultant (who apparently is not a lawyer) that helped OFC prepare its claim. I hope that OFC will voluntarily produce these items but, based on past experience, recognize that we may have to compel their production.

Based on the foregoing information, there is substantial evidence indicating that the survey errors were discovered in the fall of 2003 and that Anderson Engineering did not receive timely notification of these discoveries. Anderson Engineering also contends that the damages attributable to

the survey error would have been significantly less had Anderson Engineering received notice of these survey errors in the fall of 2003. In fact it is Anderson Engineering's position that had it been notified of the so-called errors, it could have resurveyed the area at a negligible cost before construction, which would have eliminated any need for additional fill. However, Anderson Engineering was denied that opportunity because of the late notification.

Again, Anderson Engineering is not a party to and is not bound by the settlement agreement between Burns & McDonnell and the COE. However, Anderson Engineering is willing to share the enclosed information to assist Burns & McDonnell in any efforts made be Burns & McDonnell to investigate the "early discovery" issue and/or to seek a refund from the COE or initiate the dispute resolution procedures contemplated by the settlement agreement. Likewise, I would appreciate it if you would inform me of the steps Burns & McDonnell has taken to investigate these issues and send me copies of any documents obtained by Burns & McDonnell.

Thank you for your time and attention to this matter. I look forward to hearing from you.

Sincerely,

CROWLEY, HAUGHEY, HANSON,
TOOLE & DIETRICH P.L.L.P.

By Matthew F. McLean
Matthew F. McLean

MFM/bb
Enclosure

cc: Damian LaPlaca
Bill Anderson
Dave Kornelis